# McKINNEY v. ALABAMA

No. 74-532.   Argued December 15, 1975—Decided March 23, 1976

REHNQUIST, J., delivered the opinion of the Court, in which
BURGER, C. J., and WHITE, BLACKMUN, and POWELL, JJ., joined.
BLACKMUN, J., filed a concurring opinion, *post*, p. 677. BRENNAN,
J., filed a separate opinion, in which MARSHALL, J., joined, and in

all but Part III of which STEWART, J., joined, *post*, p. 678. STEVENS, J., took no part in the consideration or decision of the case.

*Robert Eugene Smith* argued the cause for petitioner. With him on the brief was *Gilbert H. Deitch.*

*Joseph G. L. Marston III*, Assistant Attorney General of Alabama, argued the cause for respondent. With him on the brief was *William J. Baxley*, Attorney General.*

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioner was convicted of selling material which had been judicially declared obscene. At his trial he was not permitted to litigate the obscenity *vel non* of the publication which was the basis of his prosecution, even though he had not been a party to the earlier civil adjudication in which it was held obscene. We granted certiorari, 422 U. S. 1040 (1975), to consider whether this procedure comported with our decisions delineating the safeguards which must attend attempts by the States to prohibit dissemination of expression asserted to be protected by the First and Fourteenth Amendments against such interference. We reverse.

I

Pursuant to the authority conferred upon him by Ala. Code, Tit. 14, c. 64A (Supp. 1973),[1] the District Attorney

---

*Barbara Scott* filed a brief for the American Publishers, Inc., et al. as *amici curiae* urging reversal.

[1] Chapter 64A provides in pertinent part:

"§ 374 (5). Equitable action to adjudicate obscenity of mailable matter imported, sold or possessed.—Whenever the solicitor for any judicial circuit or county solicitor has reasonable cause to believe that any person, with knowledge of its contents, is (1) engaged in sending or causing to be sent, bringing or causing to be brought, into this state for sale or commercial distribution, or is (2) in this state,

of the 13th Judicial Circuit of Alabama instituted an action in equity in the Circuit Court of Mobile County seeking an adjudication of the obscenity of certain mailable matter. On February 26, 1970, the Circuit Court entered a decree which announced that the four maga-

---

preparing, selling, exhibiting or commercially distributing or giving away, or offering to give away, or has in his possession with intent to sell, or commercially distribute, or to exhibit or give away or offer to give away, any obscene mailable matter, the solicitor for the judicial circuit or county into which such mailable matter is sent or caused to be sent, brought or caused to be brought, or in which it is prepared, sold, exhibited or commercially distributed or given away or offered to be given away, or possessed, may institute an action in equity in the circuit court or any court having equity jurisdiction of the affected county for an adjudication of the obscenity of the mailable matter.

"§ 374 (6). Same; complaint.—The action authorized by section 374 (5) shall be commenced by the filing of a complaint to which shall be attached, as an exhibit, a true copy of the allegedly obscene mailable matter. The complaint shall:

"(a) be directed against the mailable matter by name or description;

"(b) allege its obscene nature;

"(c) designate as respondents and list the names and addresses, as known, of its author, publisher and any other person sending or causing it to be sent, bringing or causing it to be brought into this state for sale or commercial distribution, and of any person in this state preparing, selling, exhibiting or commercially distributing it, or giving it away or offering to give it away, or possessing it with the intent to sell or commercially distribute or exhibit or give away or offer to give it away;

"(d) pray for an adjudication that it is obscene;

"(e) pray for a permanent injunction against any person sending or causing it to be sent, bringing or causing it to be brought, into this State for sale or commercial distribution, or in this state preparing, selling, exhibiting or commercially distributing it, giving away or offering to give it away, or possessing it with the intent to sell or commercially distribute or exhibit or give away or offer to give it away; and

"(f) pray for its surrender, seizure and destruction."

zines named in the action were "judicially declared to be obscene." Twelve days later two officers of the State Attorney General's office went to the Paris Bookstall in Birmingham, Ala., a place of business operated by petitioner. They personally delivered to petitioner a letter from the Attorney General informing him of the decree of the Circuit Court of Mobile County and specifying the magazines which had been declared obscene.

On March 31, these officers returned to the Paris Bookstall and there purchased, from petitioner, a copy of the magazine New Directions, which had been specified in the Circuit Court decree and listed in the letter delivered to petitioner. Petitioner was thereafter charged with violating Ala. Code, Tit. 14, § 374 (4) (Supp. 1973),[2] by

---

[2] "§ 374 (4). Importation, sale or possession of obscene printed or written matter; penalties.—(1) Every person who, with knowledge of its contents, sends or causes to be sent, or brings or causes to be brought, into this state for sale or commercial distribution, or in this state prepares, sells, exhibits or commercially distributes, or gives away or offers to give away, or has in his possession with intent to sell or commercially distribute, or to give away or offer to give away, any obscene printed or written matter or material, other than mailable matter, or any mailable matter known by such person to have been judicially found to be obscene under this chapter, shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than one year, and may be fined not more than two thousand dollars for each offense, or be both so imprisoned and fined in the discretion of the court.

"(2) Every person who, with knowledge of its contents, has in his possession any obscene printed or written matter or material, other than mailable matter, or any mailable matter known by such person to have been judicially found to be obscene under this chapter shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than six months, or may be fined not more than five hundred dollars for each offense, or be both so imprisoned and fined in the discretion of the court."

selling "mailable matter known . . . to have been judicially found to be obscene."

At petitioner's trial for this offense he asserted as a defense his claim that the magazine was not obscene and sought to have this issue submitted to the jury. Petitioner claimed that he could not be found guilty unless the trier of fact in his case made its own determination that the magazine was obscene according to contemporary community standards. The trial court declined to submit this issue to the jury and instructed the jurors that they were not to be concerned with any determination of obscenity, and that they need only decide whether petitioner had sold material judicially declared to be obscene. The jury returned a verdict of guilty.

Petitioner unsuccessfully appealed this judgment to the Alabama Court of Criminal Appeals, whereupon the Alabama Supreme Court granted his petition for certiorari. That court, by a divided vote, also affirmed the judgment of conviction. It ruled that the trial court had properly restricted the issues presented to the jury because the decree of the Mobile County Circuit Court was one *in rem*, conclusively establishing the obscenity of the magazines against all the world. The determination of obscenity in that action was therefore held binding upon petitioner in his subsequent criminal prosecution even though he had not been a party to the earlier equity proceeding. 292 Ala. 484, 296 So. 2d 228 (1974).

## II

Petitioner contends that the procedures utilized by the State of Alabama, insofar as they precluded him from litigating the obscenity *vel non* of New Directions as a defense to his criminal prosecution, violated the First and Fourteenth Amendments. We agree. While there can be no doubt under our cases that obscene materials are beyond the protection of the First Amendment, *Roth*

v. *United States,* 354 U. S. 476 (1957); *Miller* v. *California,* 413 U. S. 15 (1973); those decisions have also consistently recognized that the procedures by which a State ascertains whether certain materials are obscene must be ones which ensure "the necessary sensitivity to freedom of expression," *Freedman* v. *Maryland,* 380 U. S. 51, 58 (1965); *Heller* v. *New York,* 413 U. S. 483, 489 (1973). The Alabama statutory scheme at issue here, as applied to petitioner, fails to meet this requirement.

It is undisputed that petitioner received no notice of the Mobile Circuit Court equity proceeding, and that he therefore had no opportunity to be heard therein regarding the adjudication of the obscenity *vel non* of New Directions.[3] Yet the State nevertheless seeks to finally bind him, as well as all other potential purveyors of the magazines described in the Mobile proceeding, to the result reached in that proceeding. There is nothing in the opinion of the Supreme Court of Alabama indicating that petitioner had available to him any judicial avenue for initiating a challenge to the Mobile declaration as to the obscenity of New Directions. Decrees resulting from *in rem* proceedings initiated under Chapter 64A of the Alabama Code could in some cases therefore have the same effect as would the *ex parte* determination of a state censorship authority which unilaterally found material offensive and proscribed its distribution. Such a procedure, without any provision for subsequent re-examination of the determination of the censor, would clearly be constitutionally infirm.

---

[3] Indeed, there is nothing in the record to indicate that he even possessed any copies of that magazine at the time the equity proceeding was commenced. If he did not, it would certainly be quixotic to expect him to anticipate later developing such an interest in the outcome of those proceedings as to prompt him to seek an opportunity to be heard therein.

The State asserts, however, that the Mobile proceeding was an "adversary judicial proceeding" as contemplated by our decisions, *Freedman, supra,* at 58; *Heller, supra,* at 489, and that relevant First Amendment values have thereby been adequately safeguarded. We cannot agree. The Chapter 64A proceeding was indeed "judicial" in the sense that it was presided over by a judge rather than an administrative official. But the State's claim regarding the adversary nature of the *in rem* proceeding is somewhat wide of the mark.

It is not altogether clear from this record precisely what transpired at the hearing in which New Directions was declared obscene. It does appear that there were, in addition to the several magazines named as "respondents" in the proceeding,[4] an individual and a corporate respondent: "Chris Zarocastas, individually and d/b/a Nelson's News Stand; [and] Nelson's News Stand, Inc., a Corporation, d/b/a Nelson's News Stand." The State contends that the existence[5] of these named parties provides sufficient adverseness in the proceedings to permit its use of the adjudication thus obtained to bind nonparties such as petitioner.

Our difficulty with this argument is its assumption that the named parties' interests are sufficiently identical to those of petitioner that they will adequately protect his First Amendment rights. There is no indication that they are in privity with him, as that term is used in determining the binding effects of judgments. See *Litchfield* v. *Goodnow's Adm'r,* 123 U. S. 549, 551 (1887). And we recognized in *Freedman* that individual exhibi-

---

[4] The publishers of the named magazines were presumably served with notice of the injunctive action in accordance with Ala. Code, Tit. 14, § 374 (7) (Supp. 1973).

[5] The decree recites that "all parties [were] present and represented by counsel," but does not name them, and the record does not otherwise indicate the extent of their participation. App. 100.

tors as well as distributors may be unwilling, for various reasons, to oppose a state claim of obscenity regarding certain material. 380 U. S., at 59. Such parties may, of course, make their own determination whether and how vigorously to assert their own First Amendment rights. The Constitution obviously cannot force anyone to exercise the freedom of expression which it guarantees. Those who are accorded an opportunity to be heard in a judicial proceeding established for determining the extent of their rights are properly bound by its outcome, either because they chose not to contest the State's claim or because they chose to do so and lost.

But it does not follow that a decision reached in such proceedings should conclusively determine the First Amendment rights of others. Nonparties like petitioner may assess quite differently the strength of their constitutional claims and may, of course, have very different views regarding the desirability of disseminating particular materials. We think they must be given the opportunity to make these assessments themselves, as well as the chance to litigate the issues if they so choose.

The State asserts that invalidation of petitioner's conviction will seriously undermine the use of civil proceedings to examine the protected character of specific materials, procedures which according to respondent offer marked advantages for all concerned over dealing with obscenity only in case-by-case criminal prosecutions. Petitioner, however, was convicted and sentenced in a criminal proceeding wherein the issue of obscenity *vel non* was held to be concluded against him by the decree in a civil proceeding to which he was not a party and of which he had no notice. Thus we need not condemn civil proceedings in general, see *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 55 (1973), to conclude that this procedure fails to meet the standards required where First Amendment interests are at stake.

Petitioner's conviction must be vacated so that he may be afforded the opportunity to litigate in some forum the issue of the obscenity of New Directions before he may be convicted of selling obscene material.[6]  The judgment of the Supreme Court of Alabama is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

MR. JUSTICE BLACKMUN, concurring.

I concur in the judgment of the Court and I join its opinion on the assumption that the Court is not deciding either of the following propositions:

1. Whether a State may institute in some state court a civil proceeding to adjudicate obscenity and then, merely by notifying publishers and exhibitors of the pendency of such adjudication, thereby bind them everywhere throughout the jurisdiction.  I take it, specifically, that the concluding sentence of the fourth-to-last paragraph of the Court's opinion, *ante,* at 676, does not resolve that question.  If it does, I refrain from joining that resolution.

2. Whether a system which merely allows one to initiate a challenge to an *ex parte* determination of obscenity is constitutionally proper.  I take it that the second paragraph in Part II of the Court's opinion, *ante,* at 674, does not resolve that question.  If it does, I refrain from joining it.  I had believed, in this connection, that it is

─────────

[6] Because we conclude that the obscenity *vel non* of the publication for the sale of which petitioner was convicted has not yet been properly considered by the state courts, we need not pass upon petitioner's claims that the publication was not obscene as a matter of law and that the Alabama statute defining obscenity is impermissibly vague.

settled that the burden of proving that a particular expression is unprotected rests on the censor, *Freedman* v. *Maryland,* 380 U. S. 51, 58 (1965); *Southeastern Promotions, Ltd.* v. *Conrad,* 420 U. S. 546, 560 (1975), and is not to be shifted to the other side by a mere "avenue for initiating a challenge."

I specify these reservations because I feel that each of the stated propositions in the First Amendment area may well be a close and difficult one, that neither has been resolved by this Court, and that, surely, neither needs to be decided in this case.

MR. JUSTICE BRENNAN.

I concur insofar as the judgment of conviction is reversed. I have frequently stated my view that "at least in the absence of distribution to juveniles or obtrusive exposure to unconsenting adults, the First and Fourteenth Amendments prohibit the State and Federal Governments from attempting wholly to suppress sexually oriented materials on the basis of their allegedly 'obscene' contents." See *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 73, 113 (1973) (BRENNAN, J., dissenting). Upon that view the Alabama Law on Obscenity, which forbids such dissemination of explicit sexual material to consenting adults, is facially unconstitutional in both its civil and criminal aspects. Therefore, while I agree that petitioner could not constitutionally be convicted and sentenced in a criminal proceeding wherein the issue of obscenity *vel non* was held to be concluded against him by the decree in a civil proceeding to which he was not a party and of which he had no notice, rather than remand for further proceedings not inconsistent with the Court's opinion, I would declare the Alabama law unconstitutional and hold that petitioner cannot be criminally prosecuted for its violation.

However, since presently prevailing constitutional ju-

risprudence accords States a broader power to regulate obscenity than I concede, it is appropriate in that circumstance that I state my concern that the Alabama law contains provisions that violate the First and Fourteenth Amendments because they impermissibly create the risk that citizens will shy away from disseminating or possessing literature and materials that the entire Court would agree are constitutionally protected. See *Jenkins* v. *Georgia,* 418 U. S. 153 (1974).

## I

The Alabama Law on Obscenity takes a form that is gaining increasing favor among the States. It permits a test of the issue of obscenity in a civil action prior to any exposure to a criminal penalty. This Court has acknowledged the value of this approach to the solution of the vexing problem of reconciling state efforts to suppress sexually oriented expression with the prohibitions of the First Amendment, as applied to the States through the Fourteenth Amendment. "Instead of requiring the bookseller to dread that the offer for sale of a book may, without prior warning, subject him to a criminal prosecution with the hazard of imprisonment, the civil procedure assures him that such consequences cannot follow unless he ignores a court order specifically directed to him for a prompt and carefully circumscribed determination of the issue of obscenity." *Kingsley Books, Inc.* v. *Brown,* 354 U. S. 436, 442 (1957). "[S]uch a procedure provides an exhibitor or p··rveyor of materials the best possible notice, prior to any criminal indictments, as to whether the materials are unprotected by the First Amendment and subject to state regulation." *Paris Adult Theatre I* v. *Slaton, supra,* at 55. See generally Lockhart, Escape from the Chill of Uncertainty: Explicit Sex and the First Amendment, 9 Ga. L. Rev. 533, 569–587 (1975).

The Alabama statute, enacted in 1961 and expressly styled the Alabama Law on Obscenity, Ala. Act. No. 856, Ala. Code, Tit. 14, c. 64A (Supp. 1973), recites in § 2 that the Act's purpose is to provide public prosecutors with both a speedy civil remedy for obtaining a judicial determination of the character and contents of publications and an effective power to reach persons responsible for the composition, publication, and distribution of obscene publications within the State. To that end, the statute distinguishes between "mailable" and "nonmailable" matter. This case concerns only the provisions governing "mailable" matter, defined as printed or written material "having second class mailing privileges under the laws of the United States," or which has not been "determined to be nonmailable" under such laws. § 3.[1] A criminal prosecution based upon "mailable" matter may be brought only when such matter has been, to the defendant's knowledge, "judicially found to be obscene" in a prior civil proceeding under the Act. § 4. A prosecuting attorney (solicitor for any judicial circuit or county solicitor) may commence "an action In Equity . . . for an adjudication of the obscenity of the mailable matter" if he has "reasonable cause to believe that any person, with knowledge of its contents," is shipping mailable obscene publications into Alabama or is selling such publications in the State. § 5. The action is "di-

---

[1] Persons may be criminally prosecuted with respect to "nonmailable" matter without a prior declaration of obscenity in a civil proceeding. § 4. The term "nonmailable" is used in 18 U. S. C. § 1461 to include far more than merely things obscene, and it is still unsettled who is empowered to make findings of nonmailability and under what circumstances, see *Manual Enterprises, Inc.* v. *Day,* 370 U. S. 478 (1962). Since this case involves only "mailable" matter, however, it is unnecessary to decide here whether the term "nonmailable," despite its uncertain content, may constitutionally be used in any degree to prove obscenity or a defendant's requisite state of mind.

rected against the mailable matter by name or description" and the respondents are the "author, publisher and any other person" responsible for offering the matter "for sale or commercial distribution" in the State or "giving it away or offering to give it away, or possessing it with the intent to sell or commercially distribute or exhibit or give away or offer to give it away." § 6. Upon the filing of the complaint and the exhibits, the court "as soon as practicable" must examine the materials and *ex parte* dismiss the complaint "[i]f there is no probable cause to believe that the mailable matter ... is obscene." § 7. If, however, the court finds probable cause, "it may forthwith issue an order temporarily restraining and prohibiting the sale or distribution of such matter" and issue an order to show cause, "returnable not less than ten days after its service," why the matter shall not be adjudicated obscene. *Ibid.* A full adversary hearing follows, to "be heard and disposed of with the maximum promptness and dispatch commensurate with constitutional requirements, including due process, freedom of press and freedom of speech." § 9.[2]  The

---

[2] Compliance with this provision should limit the duration of any *ex parte* interim restraint granted pursuant to § 7, although in my view explicit time limits would be preferable. For example, the provision for interim restraints in the New York statute approved in *Kingsley Books, Inc.* v. *Brown,* 354 U. S. 436 (1957), was in the context of a statute that specified that "[t]he person ... sought to be enjoined shall be entitled to a trial of the issues within one day after joinder of issue and a decision shall be rendered by the court within two days of the conclusion of the trial." *Id.,* at 438 n. 1. And this Court construed 19 U. S. C. § 1305 (a), which prohibits importation of obscene material, as requiring administrative and judicial action within time limits specified by the Court, thus avoiding the constitutional issue that would be presented under the principle applied in such decisions as *Freedman* v. *Maryland,* 380 U. S. 51, 58–59 (1965), and *Blount* v. *Rizzi,* 400 U. S. 410 (1971). *United States* v. *Thirty-seven Photographs,* 402 U. S. 363 (1971).

proceeding is to be conducted under the Rules of Civil Procedure in equity cases.[3]  If, after a full hearing, a publication is found obscene, the respondents may be enjoined from further distribution of that publication in Alabama, and respondents residing in Alabama may be required to dispose of such publications in their possession.  § 10.  An injunction is binding "only upon the Respondents to the action and upon those persons in active concert or participation . . . with such Respondents who receive actual notice . . . ."  § 11.  Disobedience of an injunction constitutes contempt of court by any respondent or by "any person in active concert or participation by contract or agreement with such respondent, [who receives] actual notice" of the injunction.  § 13.  If any respondent fails to comply with an order to dispose of the matter, the court may direct the sheriffs in the State to "seize and destroy all such obscene mailable matter."  § 10 (c).

The civil provisions are so interwoven with the Act's criminal and other general provisions, § 4, that the constitutional questions raised by them cannot be properly addressed, in my view, without considering the entire Act as it bears upon "mailable" material.  This conclusion is underscored by a "cumulative" obscenity law addressed to "hard-core" pornography enacted by Alabama in 1969.  Ala. Code, Tit. 14, c. 64C, §§ 374 (16j–16o) (Supp. 1973).  Section 374 (16k)(c) of that statute provides that the prohibition against selling, exhibiting, or possessing such materials shall not "be deemed to apply to mailable matter unless such mailable matter is known by such person to have been judicially found to be obscene or to

---

[3] While the Alabama law provides that the action shall be filed "in equity," § 5, the Alabama Supreme Court on July 3, 1973, adopted Rules of Civil Procedure under which there is now only one form of action known as a "Civil Action."  292 Ala. 484, 487, 296 So. 2d 228, 230 (1974).

represent hard-core pornography under this chapter or under the provisions of any other Alabama statutes."

I shall not discuss all of the provisions that raise questions but only those that appear to me most clearly to be vulnerable to constitutional challenge.

## II

### *Burden of Proof*

There can be no question that uncertainty inheres in the definition of obscenity. It is therefore to be expected that those who market written material pertaining to sex should, from fear of criminal prosecution, refrain from handling what may be constitutionally protected literature on that subject. It is this hazard to material protected by the First Amendment which commends Alabama's efforts to minimize that hazard by its regulatory scheme. A civil procedure that complies with the commands of the First Amendment and due process may serve the public interest in controlling obscenity without exposing the marketer to the risks and the stigma of a criminal prosecution, and thus protect, by minimizing the risk of marketer self-censorship, the right to the free publication and dissemination of constitutionally protected literature. But by shifting the determination of obscenity *vel non* to the civil context, the Alabama scheme creates another potential danger that the dissemination of constitutionally protected material will be suppressed.

Although the Act does not specify which party has the burden of proof in the civil proceeding, the Supreme Court of Alabama has held that the burden is on the State to prove the obscenity of the magazines, 292 Ala. 484, 487, 296 So. 2d 228, 231 (1974), and it appears that the State may do so by a mere preponderance of the evidence. Tr. of Oral Arg. 4–5. However, I think that the hazards to First Amendment freedoms inhering in the

regulation of obscenity require that even in such a civil proceeding, the State comply with the more exacting standard of proof beyond a reasonable doubt.

Inherent in all factfinding procedures is the potential for erroneous judgments and, when First Amendment values are implicated, the selection of a standard of proof of necessity implicates the relative *constitutional* acceptability of erroneous judgments. "There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value . . . this margin of error is reduced as to him by the process of placing on the other party the burden . . . of persuading the factfinder at the conclusion of the trial of [the existence of the fact] beyond a reasonable doubt." *Speiser* v. *Randall*, 357 U. S. 513, 525–526 (1958). See, *e. g., In re Winship*, 397 U. S. 358, 369–372 (1970) (Harlan, J., concurring); cf. *Rosenbloom* v. *Metromedia*, 403 U. S. 29, 49–51 (1971) (opinion of BRENNAN, J.). In the civil adjudication of obscenity *vel non*, the bookseller has at stake such an "interest of transcending value"—protection of his right to disseminate and the public's right to receive material protected by the First Amendment. Protection of those rights demands that the factfinder be almost certain—convinced beyond a reasonable doubt—that the materials are not constitutionally immune from suppression. Although *Miller* v. *California*, 413 U. S. 15 (1973), held that the concept of obscenity as defined in that case is not unconstitutionally vague, we have "expressly recognized the complexity of the test of obscenity . . . and the vital necessity in its application of safeguards to prevent denial of 'the protection of freedom of speech and press'" for nonobscene material. *Marcus* v. *Search Warrant*, 367 U. S. 717, 730 (1961). "[T]he Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will

ensure against the curtailment of constitutionally pro-
tected expression, which is often separated from obscen-
ity only by a dim and uncertain line." *Bantam Books,
Inc.* v. *Sullivan,* 372 U. S. 58, 66 (1963). The uncertainty
of that line means that erroneous judgments as to
whether material is obscene or not are likely in any
event, and are particularly so if the factfinder is only
marginally confident that the material falls on the un-
protected side of the line. In light of the command of
the First Amendment, a standard of proof by a mere
preponderance of the evidence poses too substantial a
danger that protected material will be erroneously sup-
pressed. Moreover, the potential danger of such errone-
ous determinations is especially acute in light of the fact
that the civil proceeding and the interim restraint pend-
ing adjudication on the merits operate as a prior re-
straint; indeed, the possibility of an erroneous determi-
nation is heightened by the fact that the material may
never be available to the public and thus need never
have truly faced the acid test of acceptance under pre-
vailing community standards.[4] Furthermore, in light
of the definition of obscenity—incorporating, as it does
under current law, the notion of patent offensiveness to
the average member of the community—there is an even
greater need for the *judge* operating as sole factfinder to
be convinced beyond a reasonable doubt that the material
is obscene, for his determination is made without a jury's
assessment of community values.

Moreover, the possible erroneous imposition of civil
sanctions under the preponderance-of-the-evidence stand-
ard simply creates too great a risk of self-censorship by

---

[4] Indeed, one of the problems with erroneous determinations that
prevent marginal material from ever reaching the public is that
such material, which is by definition at the fringe of what is cur-
rently patently offensive to community standards, will never be
able to exert an influence on those inherently evolving standards.

those engaged in dissemination of printed material pertaining to sex. Cf. *Smith* v. *California,* 361 U. S. 147 (1959). Just as the improper allocation of the burden of proof "will create the danger that the legitimate utterance will be penalized" and may thus cause persons to "steer far wider of the unlawful zone," *Speiser* v. *Randall, supra,* at 526, the application of a preponderance-of-the-evidence standard rather than proof beyond a reasonable doubt could cause affected persons to be overly careful about the material in which they deal. While the threat of prosecution and punishment in a criminal proceeding may be greater than the threat of economic loss in civil proceedings, the difference is one of degree. Cf. *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 277–278 (1964). The inevitable tendency of the preponderance-of-the-evidence standard—by forcing persons dealing in marginal material to make hard judgments as to whether such material is obscene in order to avoid civil sanctions—would be to limit the volume of at least the marginal material a bookseller could permissibly handle, and thus "restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly." *Smith* v. *California, supra,* at 154. This "self-censorship, compelled by the State, would be a censorship affecting the whole public, hardly less virulent for being privately administered." *Ibid.*

Related to these arguments is another consideration which has particular force in the context where a State purports to make a civil determination of obscenity conclusively binding in a subsequent criminal trial, such as is the case under Alabama's Law on Obscenity. The First Amendment proscribes criminalizing the sale of literature in general. However, criminal statutes prohibiting the sale of obscene literature have been held to be constitutionally permissible. At least two elements

must coalesce to constitute such a crime: (1) some overt act or intent to perform some act beyond mere possession concerning (2) obscene material. Each of these two elements would otherwise have to be proved beyond a reasonable doubt in a criminal proceeding, for it is settled that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U. S., at 364. The requirement that obscenity be proved beyond a reasonable doubt may not be diluted by transporting the determination to a prior civil proceeding, for the essence of the "crime" in reality remains the sale of obscene literature rather than disobedience of a court injunction.

The dangers emanating from the increased likelihood of error resulting from a preponderance-of-the-evidence standard—the likelihood of self-censorship and the erroneous proscription of constitutionally protected material—are no less great in civil than in criminal regulation; if anything, the actual margin of error even under the beyond-a-reasonable-doubt standard may be greater in civil proceedings since judges and juries may be more reluctant to declare material obscene in a criminal proceeding where incarceration will follow as a consequence. Both proceedings thus present the same hazards to First Amendment freedoms, and those hazards may only be reduced to a tolerable level by applying the same rigorous burden of proof.

### III

#### Jury Trial

This Court has held that a jury trial is not a constitutional requirement in a state civil proceeding determining the obscenity *vel non* of written materials. *Alexander* v. *Virginia,* 413 U. S. 836 (1973). However, in light of

the Court's definition of those materials which are beyond the pale of constitutional protection, a jury trial even in civil proceedings serves a salutary function.

> "The jury represents a cross-section of the community and has a special aptitude for reflecting the view of the average person. Jury trial of obscenity therefore provides a peculiarly competent application of the standard for judging obscenity which, by its definition, calls for an appraisal of material according to the average person's application of contemporary community standards. A statute which does not afford the defendant, of right, a jury determination of obscenity falls short, in my view, of giving proper effect to the standard fashioned as the necessary safeguard demanded by the freedoms of speech and press for material which is not obscene. Of course, as with jury questions generally, the trial judge must initially determine that there is a jury question, i. e., that reasonable men may differ whether the material is obscene." *Kingsley Books, Inc.* v. *Brown,* 354 U. S. 436, 448 (1957) (BRENNAN, J., dissenting).

Although the Court has rejected the contention that the Federal Constitution imposes the requirement of such a jury trial on a State conducting a civil proceeding, it is nevertheless clear that a jury is the most appropriate factfinder on the issue of obscenity, assuming the judge, as he must, has initially determined that the material is not protected as a matter of law. See, *e. g., Miller* v. *California,* 413 U. S., at 25–26. Trial by jury is particularly appropriate if the State chooses to enact a statute such as Alabama's which makes the civil determination of obscenity conclusive in a later criminal proceeding involving the parties to the civil action, and States are of course free to adopt such a factfinding procedure as the

fairest and most accurate reflection of community standards.

## IV

### *Effect of the Obscenity Determination in Civil Proceedings on the Criminal Proceeding*

Accepting as I must for present purposes the Court's current view of the constitutional permissibility of laws forbidding the dissemination of obscene materials, I do not perceive any constitutional defect in a State's criminalizing the knowing sale of material judicially determined to be obscene, provided, of course, that obscenity was determined beyond a reasonable doubt at a proceeding in which the accused was a party and of which he received adequate notice.[5]  However, one problem with such a scheme deserves comment.   Under prevailing constitutional doctrine, material cannot be proscribed unless, *inter alia*, " 'the average person, applying *contemporary community standards*' would find that the work, taken as a whole, appeals to the prurient interest . . . [and] describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law." *Miller* v. *California, supra,* at 24 (emphasis supplied).   Community standards are inherently in a state of flux, and there is a substantial danger that a civil proceeding declaring given printed matter obscene will forever

---

[5] I fully agree with the Court that a State may not make any civil proceeding binding in a criminal proceeding involving an individual who was not a party to and who did not receive notice of the civil proceeding.   Moreover, a State cannot use the result in a civil proceeding to bind a criminal defendant on any *element of a crime* as a matter of collateral estoppel.   However, I do not think the Constitution prohibits a State from making it a crime to disseminate material which was judicially determined to be obscene beyond a reasonable doubt in a prior civil proceeding in which the criminal accused participated.   In such a case, the State will still be proving every element of the crime at the criminal trial.

preclude its introduction into the community, even if the community would no longer view it as "patently offensive" or appealing to the "prurient interest." Some of the most celebrated works of our generation would likely have been the pornography of a prior generation. Thus, I would require that, at a minimum, a person charged with dissemination of material knowing it to have been judicially determined to be obscene in a civil proceeding to which he was a party should be permitted to interject into the criminal trial a claim that community standards had evolved from the time of the civil proceeding to the time the acts for which he was charged were committed. If there is some colorable showing of such a change, I believe that the First Amendment and due process would require that the State again demonstrate beyond a reasonable doubt, in the criminal proceeding, that the material was contemporaneously constitutionally "obscene." Cf. *Mullaney* v. *Wilbur,* 421 U. S. 684 (1975).[6]

---

[6] Similarly, a State would of course have to prove obscenity beyond a reasonable doubt at the criminal trial if the civil proceeding was brought in a jurisdiction that applied a different "community standard" from the one in which the alleged crime occurred. This Court has held that obscenity must be determined by applying "contemporary community standards" and that a State may adopt a "state" rather than a "national" community standard. *E. g., Hamling* v. *United States,* 418 U. S. 87 (1974); *Jenkins* v. *Georgia,* 418 U. S. 153 (1974). When a State adopts such a "state" or "national" community standard, a civil proceeding brought in one part of the State could constitutionally be employed as a conclusive determination anywhere in the State with respect to an accused who was a party to that proceeding. Since Alabama has adopted such a "state" standard, see, *e. g.,* 292 Ala. 484, 487, 296 So. 2d 228, 230 (1974), its statutory scheme is not constitutionally defective in this regard. However, a State might adopt the standard of a smaller community—for example, a city-wide community; it could not then make it a crime to disseminate material judicially determined to be obscene in a civil proceeding in which the accused par-

## V

### *The Possession Provisions*

Another potential effect of civil determinations under the Alabama law will be to deter all the acts proscribed by the statute with respect to the material declared obscene. This is precisely what the statute is meant to do. and generally the Constitution does not assure that acts may be performed with safety in connection with material judicially declared obscene. This is not true, however, with respect to the mere "possession" of obscene material.

The Act has two provisions that affect possession of obscene material. One provision renders possession of "mailable matter known . . . to have been judicially found to be obscene under this chapter" a misdemeanor subject to a possible fine of $500 and up to six months' imprisonment, or both. § 4 (2). This provision is invalid because the First Amendment prohibits States from regulating possession unrelated to distribution or public exhibition. *Stanley* v. *Georgia*, 394 U. S. 557 (1969).

The other provision affecting possession of obscene material, § 15, provides that the possession of "any three of the things enumerated in . . . [§ 4] (except the possession of them for the purpose of return to the person from whom received)" creates a rebuttable presumption that they are intended for dissemination, and the burden of proof that their possession is for the purpose of return is on the possessor. At the least this presumption shifts to defendants the burden of going forward with the evidence on the issue of possession for the purpose of distribution; and if the possessor seeks to explain possession on the ground that he is holding the materials for return, he has the burden of proof on the issue. Mere possession of

ticipated, unless the civil proceeding also transpired in the same "community" as the criminal proceeding.

obscene material for personal use may not be penalized. The obvious danger in creating a presumption that possession is for the purpose of dissemination is that lawful possession will be penalized or that persons will refrain from lawfully possessing arguably protected material. "The man who knows that he must bring forth proof and persuade another of the lawfulness of his conduct necessarily must steer far wider of the unlawful zone than if the State must bear these burdens." *Speiser* v. *Randall,* 357 U. S. 513, 526 (1958). The Alabama law poses a particular hazard in this regard, because the presumption takes effect once the defendant is shown to have possessed "any three of the things enumerated in" § 4. The "things" enumerated in § 4 are nonmailable obscene matter and mailable matter judicially declared obscene under the Act. Apparently, the presumption would come into play if a person possessed one copy of three different works which fit the statute's description. This would in effect limit persons to the unregulated possession of a maximum of two "things" in their libraries. But even if the presumption were to apply only upon proof of possession of three copies of the same item, it might result in punishment and deterrence of lawful activity, since the right to possess obscene material for personal use is not limited to one or two copies of each item. Juries are not so ingenuous that they will fail to draw reasonable inferences from the possession of multiple copies of obscene works. There is no necessity to add to the weight of such evidence presumptions and shifts in the burden of proof which jeopardize the exercise of free speech.

I concur insofar as the conviction of petitioner is reversed.

MR. JUSTICE MARSHALL joins this opinion.

MR. JUSTICE STEWART joins all but Part III of this opinion.