**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

            v.

HOSSEIN AFSHARI, aka Hosseini
Deklami; MOHAMMAD OMIDVAR;
HASSAN REZAIE; ROYA RAHMANI,
aka Sister Tahmineh; NAVID TAJ,
aka Najaf Eshkoftegi; MUSTAFA
AHMADY; ALIREZA MOHAMAD
MORADI,
            *Defendants-Appellees.*

No. 02-50355

D.C. No.
CR-01-00209-RMT
Central District
of California,
Los Angeles

ORDER AND
AMENDED
ORDER

Filed April 17, 2006
Amended April 28, 2006

Before: Andrew J. Kleinfeld, Kim McLane Wardlaw, and
William A. Fletcher, Circuit Judges.

Order;
Dissent by Judge Kozinski

---

## ORDER

The order filed April 17, 2006, denying the petition for rehearing and petition for rehearing en banc is amended as follows:

After the sentence, "The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration," insert the following sentence: "Judge

4837

Fisher and Judge Berzon were recused from all proceedings in this case."

---

## ORDER

The panel has voted unanimously to deny the petition for rehearing and petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc. A judge of the court requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Judge Fisher and Judge Berzon were recused from all proceedings in this case. Fed. R. App. P. 35(b).

The petition for rehearing and the petition for rehearing en banc are DENIED.

---

KOZINSKI, Circuit Judge, with whom Judges PREGERSON, REINHARDT, THOMAS and PAEZ join, dissenting from denial of rehearing en banc:

It goes without saying that the United States government may prohibit donations to terrorist organizations. As we explained in *Humanitarian Law Project* v. *Reno*, 205 F.3d 1130, 1133 (9th Cir. 2000), money is fungible; if an organization engages in terrorism, it can channel money donated to it for humanitarian and advocacy purposes to promote its grisly agenda. At the same time, however, giving money to a political organization that is *not* engaged in terrorist activities is constitutionally protected. The determination of whether or not an organization is engaged in terrorism is therefore crucial, because it distinguishes activities that can be criminalized from those that are protected by the First Amendment.

This case concerns the manner in which this distinction is drawn. Because designating an organization as terrorist cuts off the First Amendment rights of individuals wishing to donate to that organization, the designation must meet certain constitutional standards. The Supreme Court has twice spoken to the question of how the government may go about turning what would otherwise be protected First Amendment speech into criminal conduct, the first time in *Freedman* v. *Maryland*, 380 U.S. 51 (1965), and the second time in *McKinney* v. *Alabama*, 424 U.S. 669 (1976). In both cases, the Court laid out strict rules that the government must follow, yet the designation in this case complies neither with *Freedman* nor with *McKinney*. The net result is that Rahmani is being criminally prosecuted, and almost certainly will be convicted, for contributing to an organization that has been designated as terrorist with none of the protections that are constitutionally required for such a designation. Worse, Rahmani will in all likelihood spend many years in prison for contributing to an organization whose designation the D.C. Circuit has held does not even meet the requirements of due process. Because I believe that the prosecution in this case runs contrary to two of our defining traditions—that of free and open expression, and that of justice and fair play—I respectfully dissent from the court's failure to correct the panel's errors by taking this case en banc.

## Background

Anyone who "knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so" faces up to 10 years in prison. 18 U.S.C. § 2339B(a)(1).[1] A foreign "terrorist organization" is defined as any organization so designated by the Secretary of State under 8 U.S.C. § 1189(a)(1).[2]

---

[1]The maximum sentence was increased to 15 years in 2001. *See* USA PATRIOT Act, Pub. L. No. 107-56, § 810(d), 115 Stat. 272, 380 (2001).

[2]All references to 8 U.S.C. § 1189 are to the version in place before the 2001 and 2004 amendments.

Roya Rahmani was indicted under 18 U.S.C. § 2339B for making monetary contributions to the Mujahedin-e-Khalq (MEK), also known as the People's Mojahedin Organization for Iran, between 1997 and 2001. *See United States* v. *Rahmani*, *sub nom. United States* v. *Afshari*, 426 F.3d 1150, 1152 (9th Cir. 2005). MEK is opposed to the current fundamentalist regime in Iran. *See People's Mojahedin Org. of Iran* v. *Dep't of State*, 182 F.3d 17, 20-21 (D.C. Cir. 1999) ("*PMOI I*"). It was first designated a terrorist organization in 1997, and was re-designated in 1999 and 2001. *See id.* at 18; *Nat'l Council of Resistance of Iran* v. *Dep't of State*, 251 F.3d 192, 197 (D.C. Cir. 2001) ("*PMOI II*"); *People's Mojahedin Org. of Iran* v. *Dep't of State*, 327 F.3d 1238, 1241 (D.C. Cir. 2003) ("*PMOI III*"); *cf.* 8 U.S.C. § 1189(a)(4) (requiring re-designation every two years).

Rahmani argues that MEK is not a terrorist organization, but the crime isn't defined as providing support to an organization that *is* terrorist, only to one that is *designated* as such under 8 U.S.C. § 1189. Further, she is statutorily barred from arguing that the organization is not terrorist in nature, and therefore that her contribution is constitutionally protected. *See* 8 U.S.C. § 1189(a)(8). Not to worry, says the panel; the organization itself can challenge the designation, so Rahmani's First Amendment rights are adequately protected.

The organization's challenges in this case, however, proved futile. MEK brought a legal challenge each time it was designated, under the judicial review provision of the governing statute: "The [D.C. Circuit] Court shall hold unlawful and set aside a designation the court finds to be . . . contrary to constitutional right, power, privilege, or immunity." 8 U.S.C. § 1189(b)(3)(B). When the D.C. Circuit reviewed MEK's 1997 designation, however, it found the organization lacked due process rights and thus could not challenge the designation. *See PMOI I*, 182 F.3d at 22, 25. When MEK was re-designated in 1999 and challenged its new designation, the

D.C. Circuit reached the merits[3] and found that the designation *violated due process* because the government did not provide MEK with notice or an opportunity to be heard. *See PMOI II*, 251 F.3d at 196, 208-09. But, instead of setting the designation aside as the statute requires, *see* 8 U.S.C. § 1189(b)(3)(B), the court left the designation in place and remanded the case to the Secretary of State for further proceedings, *see PMOI II*, 251 F.3d at 209. On remand, the Secretary promptly re-designated MEK a terrorist organization *retroactively* for the two-year period ending in 2001. *See PMOI III*, 327 F.3d at 1241. The D.C. Circuit did not uphold this retroactive designation until 2003. *See id.* at 1245.

It is these designations—one of which was found to be unreviewable, one of which was found to be unconstitutional, and the last of which was adopted retroactively—that form the basis of the government's prosecution of Rahmani.

## Discussion

It is firmly established that monetary contributions to political organizations are a form of "speech" protected by the First Amendment, *see McConnell* v. *Fed. Election Comm'n*, 540 U.S. 93, 134-36 (2003); *Buckley* v. *Valeo*, 424 U.S. 1, 16 (1976) (per curiam), the panel's statements to the contrary notwithstanding, *see Rahmani*, 426 F.3d at 1159-60 ("[W]hat the defendants propose to do is not to engage in speech, but rather to provide material assistance . . . [by] sending money to the MEK."); *id.* at 1160 ("[T]he money sent to the MEK is not [speech]."). In *Humanitarian Law Project*, 205 F.3d at 1133, we held that giving money to a designated terrorist

---

[3]The D.C. Circuit reviewed the merits of the due process challenge to the designation the second time around only because the State Department had identified another organization—the National Council of Resistance of Iran (NCRI)—as MEK's "alias." NCRI had enough of a presence in the United States to assert a due process claim. *See Rahmani*, 426 F.3d at 1153.

organization is not protected speech. But if the organization is *not* a designated terrorist organization, then monetary contributions to it *are* protected by the First Amendment—maybe not to the same degree as pure speech, but protected nonetheless. A terrorist designation is thus a type of prior restraint on speech, because it criminalizes monetary contributions that would otherwise be protected by the First Amendment.

The panel dismisses Rahmani's First Amendment arguments with conclusory statements that the money here is being given to a *terrorist* organization, and is therefore a completely unprotected form of expression. *See Rahmani*, 426 F.3d at 1160 ("Donations to designated foreign terrorist organizations are not akin to donations to domestic political parties or candidates."). But this begs the question. The crux of the case—the issue the panel has elided in each iteration of its opinion—is the *process* by which the designation was made. If the designation process does not comply with constitutional standards, then the designation is invalid and Rahmani's donations are protected by the First Amendment. In order to determine whether that process was constitutional, we must rely on the guidance of *Freedman* v. *Maryland*, 380 U.S. 51 (1965), and *McKinney* v. *Alabama*, 424 U.S. 669 (1976).

**1.** "[A]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Freedman*, 380 U.S. at 57 (quoting *Bantam Books, Inc.* v. *Sullivan*, 372 U.S. 58, 70 (1963)) (internal quotation marks omitted). In *Freedman*, the Supreme Court detailed the "procedural safeguards" that must accompany prior restraints on speech, setting a high hurdle for the government to clear before a restraint can be held constitutional. *Id.* at 58. *Freedman* concluded that "only a *judicial determination* in an *adversary proceeding* ensures the necessary sensitivity to freedom of expression, [thus] only a procedure requiring a *judicial* determination suffices to impose a valid final restraint." *Id.* (emphasis added). The panel ignores *Freedman* entirely, upholding a prior restraint on speech that

contains not a single one of *Freedman*'s procedural safeguards.

In *Freedman*, the Supreme Court struck down a Maryland censorship scheme in which theaters were banned—on penalty of criminal prosecution—from showing films designated as obscene:

> It is readily apparent that the Maryland procedural scheme does not satisfy [constitutional] criteria. *First*, once the censor disapproves the film, *the exhibitor must assume the burden of instituting judicial proceedings and of persuading the courts that the film is protected expression. Second*, once the Board has acted against a film, *exhibition is prohibited pending judicial review, however protracted.* Under the statute, appellant could have been convicted if he had shown the film after unsuccessfully seeking a license, even though no court had ever ruled on the obscenity of the film. *Third*, it is abundantly clear that the Maryland statute provides *no assurance of prompt judicial determination*. We hold, therefore, that appellant's conviction must be reversed. The Maryland scheme fails to provide adequate safeguards against undue inhibition of protected expression, and this renders the § 2 requirement of prior submission of films to the Board an invalid previous restraint.

*Id.* at 59-60 (emphasis added).

The procedure for designating a foreign terrorist organization has all of the deficiencies identified by the Supreme Court in *Freedman*, and then some. First, once the Secretary of State makes the designation, the prohibition on monetary contributions takes effect immediately, *see* 8 U.S.C. § 1189(a)(2)(B)(i), and "the burden of instituting judicial proceedings and of persuading the courts" that the designation

was improper, *Freedman*, 380 U.S. at 60, falls on the organization. *See* 8 U.S.C. § 1189(b)(1).

Second, monetary contributions to a designated organization are prohibited even while judicial review is pending. *See id.* §§ 1189(a)(2)(B)(i), (b)(4) ("The pendency of an action for judicial review of a designation shall not affect the application of this section, unless the court issues a final order setting aside the designation."); *Freedman*, 380 U.S. at 60. This procedural deficiency is particularly damaging to Rahmani, who made all her donations at least two years before the D.C. Circuit finally approved MEK's designation as a terrorist organization.

Third, "it is abundantly clear that the . . . statute provides no assurance of prompt judicial determination." *Id.* To the contrary, the statute seems to discourage any judicial determination at all, giving the organization only 30 days to challenge its designation. *See id.* § 1189(b)(1). What's more, the panel concedes that the D.C. Circuit has found foreign entities have no due process rights: "MEK was a 'foreign entity without . . . presence in this country' and thus 'ha[d] no constitutional rights under the due process clause.' Therefore, the MEK was not entitled to notice and a hearing." *Rahmani*, 426 F.3d at 1153 (quoting *PMOI I*, 182 F.3d at 22) (alterations in original) (footnote omitted). In other words, the only entity that is statutorily eligible to challenge the terrorist designation—the organization being designated—will ordinarily be unable to bring any kind of meaningful[4] challenge. *See* 8 U.S.C. §§ 1189(a)(1)(A), (a)(8), (b)(1).

---

[4]I say "meaningful" challenge because, despite finding that MEK had no due process rights, the D.C. Circuit did conduct *some* review of the Secretary's designation as required by the statute. *See* 8 U.S.C. § 1189(b)(3). But all the D.C. Circuit could do was glance at the Secretary's one-sided evidence. "[N]ot surprisingly," the D.C. Circuit found nothing in the Secretary's materials to support MEK's argument that it was erroneously designated. *PMOI I*, 182 F.3d at 24.

Even when an organization can avail itself of the full "judicial review" prescribed by the statute, *see id.* §§ 1189(b)(2) & (3), such review comes nowhere near what *Freedman* requires. The statute uses "APA-like language," *PMOI I*, 182 F.3d at 22, barring the D.C. Circuit from overturning the Secretary's designation unless, for example, it lacks substantial evidence or is arbitrary and capricious. *See* 8 U.S.C. § 1189(b)(3). As the D.C. Circuit noted, under the statute's judicial review provisions, the designated organization "does not have the benefit of meaningful adversary proceedings . . . other than procedural shortfalls so obvious a Secretary of State is not likely to commit them." *PMOI II*, 251 F.3d at 197. But *Freedman* explicitly requires a "*judicial* determination in an *adversary* proceeding" on the merits, not merely a court's cursory check that the agency followed its own procedures. 380 U.S. at 58 (emphasis added). And *Freedman* underscores the inadequacy of *any* agency for making such a judicial determination: "[T]here inheres the danger that [an agency] may well be less responsive than a court—part of an independent branch of government—to the constitutionally protected interests in free expression." *Id.* at 57-58.

As in *Freedman*, the only possible conclusion is that the terrorist organization designation scheme "fails to provide adequate safeguards against undue inhibition of protected expression," and therefore is an invalid prior restraint. *Id.* at 60.

The procedural history of this case perfectly illustrates the patent unconstitutionality of the terrorist organization designation process: Rahmani was indicted for sending money to MEK from 1997 to 2001, the *very years* during which the designation was admittedly unconstitutional.[5] Had the D.C. Cir-

---

[5]Only the 1999 designation was declared unconstitutional by the D.C. Circuit. *See PMOI II*, 251 F.3d at 197. But the 1999 designation "extended the . . . 1997 designation," the constitutionality of which the court never reached in *PMOI I. See id.* The process by which the organization was

cuit followed the letter of the statute, it would have struck
down the designation, *see* 8 U.S.C. § 1189(b)(3)(B), and Rah-
mani could not have been charged with a crime. The State
Department could, of course, have re-designated MEK in
2001 using constitutional procedures, but it could not have
*retroactively* designated it to criminalize Rahmani's donations.[6]
*See* U.S. Const. art. I, § 9, cl. 3 (Ex Post Facto Clause).

No "judicial determination" upheld MEK's designation on
its merits until two years *after* Rahmani made her allegedly
criminal monetary contributions. *Cf. Freedman*, 380 U.S. at
58. The panel thus condones a uniquely unconstitutional (and
oxymoronic) practice: an *ex post facto prior restraint*. The
simple fact is that Rahmani is being prosecuted—and will
surely be sent to prison for up to 10 years—for giving money
to an organization that no one other than some obscure man-
darin in the bowels of the State Department had determined

---

designated had not changed from 1997 to 1999, so if one was unconstitu-
tional then the other was as well. After *PMOI II* was decided, the designa-
tion process was amended to redress the due process problems identified
by the court. *See* USA PATRIOT Act § 411(c); *PMOI II*, 251 F.3d at 208-
09.

[6]In crafting its remand to the Secretary of State, the D.C. Circuit did not
seem to be aware of the effect the designation plays in criminal prosecu-
tions. *See PMOI II*, 251 F.3d at 209. In fact, it explicitly pointed to "the
timeline against which [it was] operating," noting that "the two-year des-
ignations before us expire in October of this year." *Id.* In other words, it
didn't much matter whether the designation was revoked or whether the
case was simply remanded for curative measures; even if the civil conse-
quences of MEK's designation had been lifted, they could have been reim-
posed almost immediately when MEK was re-designated.

The same cannot be said for criminal prosecutions premised on the des-
ignation: Contributing material support to an organization *not* designated
a terrorist organization cannot subject a person to criminal sanction just
because the same organization is later so designated. Had the D.C. Circuit
revoked MEK's designation in 2001—as it was required to do under the
statute—Rahmani's donations from 1997 to 2001 would have been per-
fectly legal, even if MEK was subsequently re-designated.

to be a terrorist organization. The panel has simply overruled *Freedman*—without so much as mentioning it.

**2.** The panel's opinion also contravenes *McKinney* v. *Alabama*, 424 U.S. 669 (1976). *McKinney* involved a criminal defendant charged with selling a magazine that had previously been declared obscene in a separate in rem action. The Supreme Court, in an opinion by Justice Rehnquist, held that the defendant had a right to argue *at his own trial* that the magazine was not actually obscene and was thus protected by the First Amendment. *See id.* at 674-76. *McKinney* thus stands for the proposition that a criminal defendant has an individual right to challenge the exclusion of what would otherwise be protected speech from the protection of the First Amendment.

The panel here holds that, because MEK had an opportunity to challenge its terrorist designation, *see* 8 U.S.C. § 1189(b)(1), Rahmani can be precluded from arguing in her own defense that MEK is not actually a terrorist organization. It is not at all clear to me that a constitutional challenge that can (maybe) be raised only by a third party in a separate proceeding can *ever* be an adequate substitute for the procedures specified in *McKinney*. Assuming, however, that such a third-party procedure is constitutionally permissible, on the theory perhaps that mere political contributions do not merit the same lofty constitutional protection as the smutty magazines in *McKinney*, what actually happened in this case surely cannot be sufficient to strip Rahmani of all First Amendment protections. As will be recalled, MEK *did* litigate its designation in the courts and the designation was held to be unconstitutional. This is how the D.C. Circuit described the procedure used:

> The unique feature of this statutory procedure is the dearth of procedural participation and protection afforded the designated entity. At no point in the proceedings establishing the administrative record is the alleged terrorist organization afforded notice of

> the materials used against it, or a right to comment on such materials or the developing administrative record. . . . The Secretary may base the findings on classified material, to which the organization has no access at any point during or after the proceeding to designate it as terrorist. . . . Thus the entity does not have the benefit of meaningful adversary proceedings on any of the statutory grounds, other than procedural shortfalls so obvious a Secretary of State is not likely to commit them.

*PMOI II*, 251 F.3d at 196-97. This is the process the panel holds is sufficient to extinguish Rahmani's First Amendment rights. What good is the organization's right to challenge its designation if the outcome—in this case, that the designation was unconstitutional—is entirely ignored? Moreover, how can a procedure that was judicially determined to violate due process be an adequate substitute for the type of direct challenge that *McKinney* requires?

The *McKinney* portion of the panel's opinion is premised on the fact that the organization was properly designated as a terrorist organization, and that the designation had already been subject to judicial review. The panel states:

> What is at issue here is not anything close to pure speech. It is, rather, material support to foreign organizations that the United States has deemed, *through a process defined by federal statute and including judicial review by the D.C. Circuit*, a threat to our national security. . . . The "foreign terrorist organization" designation means that the Executive Branch has determined—*and the D.C. Circuit*, in choosing not to set aside the designation, *has concluded that the determination was properly made*—that materially supporting the organization is materially supporting actual violence.

*Rahmani*, 426 F.3d at 1160 (emphasis added). But, as described above, the D.C. Circuit explicitly concluded that the designation in this case was *not* "properly made." Thus, the panel's argument—the very foundation of its attempt to distinguish this case from *McKinney*—is entirely beside the point.

Without a proper designation, the money being donated here cannot be deemed anything other than a donation to a legitimate foreign political organization—much closer to the "pure speech" at issue in *McKinney*. Monetary donations may not receive the full strict scrutiny protection that pure political speech receives, *see McConnell*, 540 U.S. at 137, but heightened scrutiny still applies, *see id.* at 143 (holding that campaign contributions can be limited because "the prevention of corruption or its appearance constitutes a *sufficiently important interest*" (emphasis added)).

The panel's final attempt to distinguish this case from *McKinney* based on "deference [to] the Executive Branch in the area of national security" fares no better. *Rahmani*, 426 F.3d at 1161. What possible relevance could national security have once the terrorist designation was declared unconstitutional? The panel pretends the designation was valid and that it can therefore refer to MEK as a terrorist organization. But until such a determination is properly made, asserting the presence of a national security concern is mere speculation—hardly a sufficient substitute for the individual procedural right granted in *McKinney*.

**3.** Why does the panel ignore common sense and find this whole scheme constitutional? Because, it says, it "do[es] not have authority to reverse the decisions of a sister circuit," *id.* at 1156, and "it would be contrary to the statutory scheme for us to hold that the designation was invalid," *id.* at 1157. But the remedy Rahmani seeks requires neither: The D.C. Circuit's opinion in *PMOI II*, which found the designation unconstitutional but remanded to the Secretary of State with-

out setting the designation aside, said nothing about use of the designation in criminal prosecutions; thus, there is nothing to "reverse." *See PMOI II*, 251 F.3d at 209; note 6 *supra*. Nor is there a need to strike down the designation; the designation, and the many civil consequences that flow from it, need not be disturbed. *See PMOI II*, 251 F.3d at 196 (civil consequences of designation include, for example, blocking funds deposited with U.S. financial institutions and denying certain members of the organization entry into the United States). The panel need only hold that a designation found by the D.C. Circuit to be unconstitutional cannot form the basis of a criminal prosecution.

\* \* \*

I can understand the panel's reticence to interfere with matters of national security, but the entire purpose of the terrorist designation process is to determine *whether* an organization poses a threat to national security. Under the Constitution, the State Department does not have carte blanche to label any organization it chooses a foreign terrorist organization and make a criminal out of anyone who donates money to it. Far too much political activity could be suppressed under such a regime.

In any event, our task in this case was simple. The D.C. Circuit had already done all of the hard work, examining MEK's designation and finding it to be constitutionally inadequate. All we had to do was take the next logical step and hold that this inadequate designation could not form the basis for a criminal prosecution. The Supreme Court hasn't hesitated to take a close look at the constitutionality of certain war on terror-related procedures—especially procedures that are still being tested and developed. *See, e.g.*, *Hamdi* v. *Rumsfeld*, 542 U.S. 507, 537-38 (2004). We should be no less vigilant.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO
───────────

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.