SEPTUM, INC., a Georgia Corporation, Plaintiff-Appellant,

v.

Robert E. KELLER, Individually and as District Attorney for Clayton County, State of Georgia, Defendant-Appellee.

No. 78–1141.

United States Court of Appeals, Fifth Circuit.

March 24, 1980.

Foy R. Devine, Atlanta, Ga., for plaintiff-appellant.

Harold G. Benefield, Asst. Dist. Atty., Jonesboro, Ga., for defendant-appellee.

Before BROWN, HILL and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

This action was brought in the United States District Court for the Northern District of Georgia by Septum, Inc. [Septum], a Georgia corporation engaged in the business of exhibiting motion pictures, against Robert E. Keller, individually and as District Attorney for Clayton County in the State of Georgia [the County]. Septum sought injunctive and declaratory relief [1] from the County's threatened enforcement of the Georgia obscenity statute, Ga.Code Ann. § 26–2101 (1978),[2] claiming that enforcement of the statute against it infringed rights secured to it under the first amendment, in violation of 42 U.S.C. § 1983 (1976).[3] The basis for the threatened prosecution was Septum's exhibition of an X-rated motion picture entitled "Cinderella," a film loosely based on the well-known fairy tale and evidently incorporating some sexually explicit symbolism not found in the original.

The events leading up to this litigation are important. In December 1975 three Septum employees were arrested at one of Septum's theaters, the Old Dixie Twin Cinema in Clayton County, and were charged with exhibiting obscene material in violation of the Georgia obscenity statute. According to the affidavit of Robert B. Busman, Septum's president, charges were dropped against the three employees in return for Septum's agreement to stop showing X-rated films in Clayton County. In March 1977, apparently in an attempt to avoid the embarrassment that would attend another obscenity arrest, Septum entered into an informal arrangement with the Clayton County District Attorney regarding the future exhibition of X-rated films. The apparent terms of this arrangement includ-

---

1. Septum's Complaint seeks both a preliminary and a permanent injunction, enjoining the County from enforcing or threatening to enforce the Georgia obscenity statute, Ga.Code Ann. § 26–2101 (1978), with respect to the movie "Cinderella." The Complaint also seeks a declaration that "Cinderella" is not obscene within the meaning of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and the Georgia obscenity statute; and that the application of that statute to Septum's operations is a violation of the rights secured to it under the first and fourteenth amendments.

2. Ga.Code Ann. § 26–2101(b) (1978) provides:
   (b) Material is obscene if:
   (1) to the average person, applying contemporary community standards, taken as a whole, it predominantly appeals to the prurient interest, that is a shameful or morbid interest in nudity, sex or excretion;
   (2) the material taken as a whole, lacks serious literary, artistic, political or scientific value, and
   (3) the material depicts or describes, in a patently offensive way, sexual conduct specifically defined in subparagraphs (i) through (v) below:
   (i) acts of sexual intercourse, heterosexual or homosexual, normal or perverted, actual or simulated;
   (ii) acts of masturbation;
   (iii) acts involving excretory functions or lewd exhibition of the genitals;
   (iv) acts of bestiality or the fondling of sex organs of animals;

(v) sexual acts of flagellation, torture or other violence indicating a sadomasochistic sexual relationship  .   .   . .

3. 42 U.S.C. § 1983 (1976) provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   Jurisdiction is based on § 1983 and on 28 U.S.C. § 1343 (1976). The latter statute provides, in pertinent part:
   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   .     .     .     .     .

   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
   (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

ed the District Attorney's agreement to issue a warning to Septum in the event the County intended to proceed with obscenity arrests and prosecutions against the theater because of an allegedly obscene movie. Septum submits that the purpose of the arrangement was to give the theater the option of withdrawing the film voluntarily rather than forcing the County to prosecute to suppress it. According to Mr. Busman's affidavit this procedure was followed in May 1977 with respect to a film entitled "Kinky Ladies of Bourbon Street." The Clayton County District Attorney apparently indicated that he would initiate a prosecution if Septum continued to exhibit the film; as a result, Septum discontinued showing the movie.

The scenario underlying the present litigation began September 6, 1977. Septum had been showing the movie "Cinderella" at the Old Dixie theater in Clayton County since August 26, 1977, and the District Attorney's office had received over 200 phone calls complaining about it. The District Attorney determined that he would have to view the movie to decide whether a criminal prosecution should be initiated. Thereafter, at Septum's request, a conference was held between Mr. Busman and his attorneys and members of the District Attorney's office on September 6, 1977. At that time the District Attorney informed Septum's representative that if Septum continued to show the movie, he would initiate criminal prosecution. At the request of Septum's attorney, the District Attorney prepared a letter containing substantially the same state-

ment of intent as had previously been conveyed.[4] Septum stopped showing the film, and on September 7, 1977 filed this suit in federal district court.

The district court declined to accept jurisdiction of the complaint after a full hearing on the merits, holding that there was no "actual controversy" as required by Article III of the United States Constitution and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1976).[5] The court said:

This court holds that where the circumstances demonstrate that a potential criminal defendant has voluntarily entered into and obtained an agreement with the prosecuting authorities under which such authorities promise not to prosecute under the obscenity laws prior to notification of an intent to do so, such a potential criminal defendant, by engaging in a collusory relationship with the prosecutors, in effect waives the right to declaratory relief through an action under § 1983, based on prior restraint under the color of the obscenity statute.

Although the district court purported to base its decision exclusively on the issue of justiciability, and explicitly disavowed an intention to rule on the question of abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, the *Younger* issue is properly before this court for review. The issue is certain to arise on remand if it is not dealt with here. Despite the district court's reservations, the court erroneously construed

---

4. The letter to Septum's attorney, signed by defendant Robert Keller as District Attorney for Clayton County, reads as follows:

Dear Foy:

I am writing this letter in response to your request as the attorney for Septum Twin Cinema that I notify you of any action contemplated by this office on the above referenced matter prior to taking such action.

Since the movie Cinderella began showing in your theater, my office has been inundated with telephone calls in oposition [sic] to the showing of this movie. Members of my staff have viewed the movie and feel that there is sufficient probable cause that the movie violates the Georgia obscenity law under Georgia Code Annotated Section 26–2101.

I can not prevent you from showing the movie but at your request I am notifying you that if the Septum Twin Cinema continues to show the movie, Cinderella, my office will institute the appropriate criminal prosecution.

5. Article III provides, in pertinent part: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution . . . ." U.S.Const. Art. III, § 2. Federal declaratory judgments are permitted under 28 U.S.C. § 2201 (1976), which limits the availability of that remedy to "a case of actual controversy."

the import of *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), which governs the resolution of the *Younger* abstention issue here, and in doing so effectively decided the question. The issue was presented below by the County, the parties fully explored the issue in their briefs and at oral argument, and the district court made a ruling concerning this central issue. Therefore, the question whether the federal district court should abstain under the principles of *Younger v. Harris* and subsequent cases elaborating and refining those principles is now appropriately before this court.

## I.

We address first, and briefly, the County's contention that no case or controversy within the meaning of Article III of the Constitution and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1976), can be discerned in this case. This position, which is difficult to understand in view of the uncontroverted evidence establishing Septum's desire to exhibit "Cinderella" at its theater in Clayton County and the County's intention to prosecute if it does so, is apparently based on the novel theory that not only must the parties' legal interests be adverse, but there must be personal animosity between them as well.[6] The County's apprehension of the nature of the controversy required by Article III is mistaken. Both parties to this litigation made an effort to accommodate the private and public interests involved in this kind of situation without resort to the State's criminal process. When the parties to such an agreement reach an impasse in negotiation, however, for us to hold that any controversy evaporates under the light of the previous cooperative relationship between them would effectively eliminate the incentive for private parties to participate in this kind of arrangement. More importantly,

however, personal animosity between the parties to a lawsuit has never been considered a necessary aspect of a controversy under Article III or the Federal Declaratory Judgment Act. All that is required is that "[t]he controversy . . . be definite and concrete, touching the *legal* relations of parties having adverse *legal* interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (emphasis added). The County believes "Cinderella" is obscene; Septum does not. In the circumstances of this case, that is sufficient.

That no criminal prosecution has been instituted against Septum does not affect the existence of a controversy, for federal courts are not hostile to anticipatory constitutional challenges to statutes. Such challenges "play a most vital role in modern efforts to enforce constitutional rights." *International Soc. for Krishna Consciousness v. Eaves*, 601 F.2d 809, 817 (5th Cir. 1979). When a plaintiff alleges an intention to engage in conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder, he "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973); *See Babbitt v. UFW*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979); *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *Evers v. Dwyer*, 358 U.S. 202, 204, 79 S.Ct. 178, 179, 3 L.Ed.2d 222 (1958). The controversy between Septum and the County satisfies all the foregoing requirements, and thus a justiciable controversy sufficient to permit the exercise of the judicial power of the United States is presented here.

---

**6.** The gist of the County's argument is conveyed in the following extract from its brief:

The history of the involvement between Septum, Inc., its attorneys, and representatives of the Clayton County District Attorney discloses a relationship which falls far short of the Article III "Controversy", the existence of which is a condition precedent to the invocation of federal jurisdiction. Rather than a "concrete adverseness" . . . there was, an atmosphere of co-operation and negotiations *all at the behest of Septum, Inc.* Brief of Appellee at 5 (emphasis in original).

## II.

The district court concluded that the pre-enforcement notification agreement that operated here raised a significant question about the appropriateness of "federal intervention" when the case was viewed in the light of the principles of *Younger v. Harris* and it progeny. We note at the outset two important characteristics of the case before us. First, there is no question of federal intervention as such, unless any federal constitutional challenge to a state statute asserted in a federal court amounts to federal intervention in the affairs of the state. There is no state proceeding, criminal or equitable, in progress at the moment; nor will there be one unless Septum chooses either to seek equitable relief in a state court or to subject itself to criminal prosecution by exhibiting "Cinderella" without obtaining a judicial declaration of its right to do so. Second, since Septum has indicated that it will not expose itself to the risk of a criminal prosecution by exhibiting "Cinderella," we can be certain that this case does not present a choice between a remedy at law and one in equity. Instead, the only question is whether a plaintiff who has negotiated an agreement with state prosecuting authorities for pre-enforcement notification can, consistent with the notions of federalism, equity, and comity embraced in the *Younger* line of cases, obtain equitable relief in a federal forum upon applying to the federal court in the first instance.

"Our Federalism" was the basis in *Younger* for holding that federal injunctive relief is not normally available to halt a state criminal prosecution.[7] Two years later, in *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Court emphasized that "the relevant principles of equity, comity, and federalism 'have little force in the absence of a pending state proceeding.'" *Id.* at 462, 94 S.Ct. at 1217, *quoting Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972). The principle that a court should not inject equity when there is an adequate remedy at law seems to have no application to this case, since the choice is only between a state or a federal forum to hear a prayer for equitable relief. Moreover, because the federal court in this situation is not asked to interrupt or intervene in an ongoing, or imminent, state proceeding, notions of federalism—at least insofar as that term calls to mind the fact that state and federal courts exist side by side and exercise concurrent jurisdiction over a case like this one—seem just as inapposite. This plaintiff's choice of a federal forum involves no more interference with Georgia's orderly administration of its own affairs than is attendant upon any § 1983 challenge to state laws. Nevertheless, arguably the "more vital consideration"[8] of comity counsels federal restraint when the plaintiff's verifiable allegations of a threat of enforcement arise out of the kind of pre-enforcement notification agreement underlying this case. We note that the plaintiff's prior negotiation with prosecuting authorities is the only element distinguishing this case from *Steffel v. Thompson*,[9] in which the

7. *See Younger v. Harris*, 401 U.S. 37, 43–54, 91 S.Ct. 746, 750–755, 27 L.Ed.2d 669 (1971).

8. *See Trainor v. Hernandez*, 431 U.S. 434, 443, 97 S.Ct. 1911, 1917, 52 L.Ed.2d 486 (1977); *Juidice v. Vail*, 430 U.S. 327, 334, 97 S.Ct. 1211, 1216, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601, 95 S.Ct. 1200, 1206, 43 L.Ed.2d 482 (1975); *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971).

9. *Steffel* involved the threatened enforcement of Georgia's criminal trespass statute against one who was distributing handbills on a sidewalk surrounding a shopping center. According to the stipulated facts of the appeal, Steffel

was warned on two different days by police that he would be arrested if he did not depart. 415 U.S. at 455–56, 94 S.Ct. at 1213–14. In addition, Steffel testified that several months earlier police officers had delivered a similar warning. *Id.* at 455 n. 2, 94 S.Ct. at 1214 n. 2. The Georgia statute, Ga. Code Ann. § 26–1503 (1972), requires a single notice to depart from the owner or rightful occupant of the property, but none from law enforcement authorities. Thus the distinction between Steffel's case and Septum's is not that pre-enforcement notification was delivered to Septum when none was required, but only that in Septum's case it was delivered at Septum's request, whereas in Stef-

Court held that abstaining from exercising jurisdiction over Steffel's § 1983 challenge to a Georgia statute was improper when the plaintiff was threatened with prosecution but could not be prosecuted unless he violated the statute another time. With regard to the concurrent availability of declaratory relief in the state courts of Georgia, which was permitted at that time, as it is now, *see* Ga. Code Ann. § 110–1101 (1972), the Court noted: "[W]e do not require petitioner first to seek vindication of his federal rights in a state declaratory judgment action, see *Lake Carriers' Assn. v. MacMullan*, [406 U.S.] at 510, [92 S.Ct. 1749, at 1757;] *Wisconsin v. Constantineau*, 400 U.S. 433, [91 S.Ct. 507, 27 L.Ed.2d 515] (1971) . . . ." 415 U.S. at 475, n. 22, 94 S.Ct. at 1224, n. 22. The County's uncoerced agreement to notify Septum of its intent to prosecute if Septum continued to exhibit an allegedly obscene movie does not alter the analysis. The agreement was negotiated at arms' length and benefited both parties. Septum guarded itself to a degree against the risk of criminal prosecution, and the County profited in being able to conserve, to an extent, its prosecutorial resources. The *quid pro quo* of the agreement did not include any provision limiting the availability, to Septum, of federal relief.

The proposition that federal courts should impose such a limitation as a matter of law based on the vague notion of comity finds no support in previous *Younger*-type cases, and would run directly contrary to the policies the Supreme Court has identified underlying § 1983. In *Lake Carriers' Ass'n v. MacMullan, supra,* the Court said: "[T]he availability of declaratory relief in [a state court] on appellants' federal claims is wholly beside the point." *Id.* 406 U.S. at 510, 92 S.Ct. at 1757. In reaching this conclusion the Court relied on the following apposite language from *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967):

> In thus [establishing jurisdiction for the exercise of] federal judicial power,

Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of its federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, " . . . to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . . ," *Robb v. Connolly*, 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542.

Moreover, allowing the district court to abstain from exercising jurisdiction over this case would do violence to the Supreme Court's holding in *Steffel.* Concerning the applicability of *Steffel,* the district court quoted the following language from that case:

> . . . federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied.

415 U.S. at 475, 94 S.Ct. at 1223–1224. The court reasoned that although federal declaratory relief is not precluded, neither is a federal forum for the complaint required. This was error. In *Steffel* the Supreme Court reversed the Fifth Circuit's determination that abstention was proper under the principles announced in *Younger* and in *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), and remanded. Plainly the disposition of that case precludes discretionary abstention in this one, since there is no factual distinction between the cases relevant to the abstention issue.

Accordingly, we hold that abstention is inappropriate in this case. We reverse and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

fel's case it was delivered gratuitously. As we discuss *infra*, the agreement to warn Septum of

a contemplated prosecution was designed to benefit all concerned.

JAMES C. HILL, Circuit Judge, specially concurring:

I concur, but add these observations. The result we find to be required in this case may well bring to an end cooperative undertakings between potential adversaries in situations like the one reviewed here.

If a prosecuting attorney prefers that he not be forced to try his cases in federal court, often sitting many miles away from the state court having jurisdiction, he would be well advised to refrain from conciliatory measures which might warn his adversary of intention to bring criminal proceedings. Septum, in this case, professes to have wanted an opportunity to consider substituting a film for the allegedly offensive one and, on that profession, negotiated a "notice" arrangement with the district attorney. We now announce that by making this agreement Septum brought itself within the *Younger* "window": A point lying between the time when a real and substantial threat of prosecution arises and the time when state criminal proceedings are commenced.

Justice Stewart observed in *Steffel v. Thompson*, 415 U.S. 452, 476, 94 S.Ct. 1209, 1224, 39 L.Ed.2d 505 (1974) (Stewart, J., concurring): "Cases where such a 'genuine threat' can be demonstrated will, I think, be exceedingly rare." Perhaps their rarity will be governed by the willingness of the state's attorney to work constructively with potential violators. Such cases will be rare, indeed, where the state refuses to be helpful; to secure state court jurisdiction, it must institute criminal proceedings by surprise.

Perhaps parties yet bent upon constructive cooperation can devise a way to implement that good impulse without transferring potential cases from state courts to federal courts. I do not believe that what we say today is intended to discourage their trying.

JOHN R. BROWN, Circuit Judge, concurring in part and dissenting in part:

The issue which faces us today is one which places upon the equitable considerations enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970), the most strenuous challenge I believe they have yet undergone. We must decide whether a plaintiff, requesting declaratory and injunctive relief against a State District Attorney, may take advantage of an artificial set of circumstances, created through the construct of an agreement it entered into with its potential prosecutor, to bring an action which would otherwise clearly have been precluded by 28 U.S.C.A. § 2283 and *Younger*.

This agreement wards off indefinitely any actual prosecution by the District Attorney's office, thereby dispelling the likelihood of a "pending prosecution" which would automatically force the Federal Court to refrain from exercising its jurisdiction. Yet at the same time, this agreement hovers as a threat of prosecution, not merely "imaginary and speculative," but substantial enough to create a justiciable issue for the Federal Courts to decide. Thus, Judge Randall finds the plaintiff balancing nicely on the sill of the *"Steffel* window" with a set of circumstances similar, although not identical, to those of *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1971) in which the Supreme Court held the *Younger* abstention doctrine inapplicable.

I agree with Judge Randall that a justiciable controversy exists in this case. But I dissent from her analysis of the *Younger* abstention question. I believe it is an oversimplification of the case to say that just because there is technically no pending prosecution in State Court, that there is no question of Federal intervention in the affairs of the State, and that the case is therefore controlled by *Steffel.* Nor do I agree with her statement that since Septum does not intend to risk criminal prosecution by showing "Cinderella," there is no choice between law and equity at issue here.

Both of these conclusions can be made only if one ignores the fact that, had there not been an agreement by the District Attorney to warn Septum before making ar-

rests under the obscenity statute, there would have been a criminal prosecution pending, and the Federal District Court would have had no choice but to abstain from hearing the case. To ignore the fact that the "*Steffel* window" in this set of circumstances was created artificially through an agreement between the parties is to ignore the equitable considerations which are the first and foremost reason that *Younger* abstention came into being. I believe this one fact requires us to reconsider the *Younger* equitable principles, to distinguish this case from *Steffel*, and to affirm.

### I. Equity

Although the procedural distinction between actions at law and actions at equity has disappeared in Federal District Courts, F.R.Civ.P. 1, suits for injunctions and for declaratory relief, both traditionally brought as equitable actions (*see* D. Dobbs, Remedies 25–26 (1973)) are still governed by the previously established substantive principles of equity. C. Wright, Law of Federal Courts, 318 (3d ed. 1976); 30 C.J.S. *Equity* § 6 (1965).

The most basic principle of equity is the discretion of the Court. Historically, equitable remedies were granted only in cases where an action at law would not provide adequate relief. *Dobbs, supra,* at 33, 57. The remedy granted by a Court sitting in equity was based on its "sense of need and justice." *Id.* at 25.

Traditionally, injunctions would issue when, not only did the remedy at law fail to meet the adequacy test, but the damage to the plaintiff if he were forced to settle for only a legal remedy, would be irreparable. *Id.* at 108. Plaintiffs in equity often sought declaratory judgments along with injunctions in order to obtain a formal declaration of their rights with respect to an existing conflict or one that was fairly certain to arise in the future. *Id.* at 26.

### II. Abstention

Federal injunctions against State Court proceedings are governed by 28 U.S.C.A. § 2283 which is the starting point for the *Younger* abstention doctrine. This statute provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

It is based on the same law of equity common to all injunctions. Its purpose is "to prevent needless friction between state and federal courts." *Oklahoma Packing Co. v. Oklahoma Gas and Electric Co.,* 309 U.S. 4, 9, 60 S.Ct. 215, 218, 84 L.Ed. 447, 537 (1940). The notions of federalism and comity which underlie § 2283 and which were developed so extensively in *Younger* are actually founded in equity. Abstention itself is an equitable principle that has developed in Federal Court. 30 C.J.S. *Equity* § 10.

Although it is in the form of law, § 2283 is the codification of the equitable rule governing availability of the injunctive remedy. Normally a Federal Court may not enjoin a state proceeding because it is assumed the state proceeding will provide an adequate remedy at law, that is, it will adequately adjudicate the would-be Federal plaintiff's rights under Federal law and the Constitution.

The three exceptions enunciated in the statute are fundamentally codifications of three situations in which a Federal injunction should issue because it has been Congressionally determined that the remedy under state law would be inadequate. *Younger* refines the requirements for the application of the § 2283 exceptions in its holding that, to enjoin a pending state prosecution, not only must the remedy at law be inadequate, but there must be a "showing of bad faith, harassment, or any other unusual circumstances that would call for equitable relief." *Younger, supra,* 401 U.S. at 54, 91 S.Ct. at 755, 27 L.Ed.2d at 681. Essentially this means the plaintiff also must show severe, irreparable harm in order to get a state proceeding enjoined.

Of course, § 2283 applies only to injunctions, but declaratory judgments are not

that different a matter. Although *Steffel* discusses at length the differences between injunctive and declaratory relief, this was only with respect to a situation where there was no pending state criminal prosecution. In such a case, even an injunction could issue. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930–31, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648, 658–59 (1975). *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1970), a companion case to *Younger*, states the applicable rule for Federal declaratory relief after a state proceeding has begun. In most cases it will not be granted if an injunction would not be appropriate either.

I dissent because I feel the same deference to equitable principles which permeates § 2283, *Younger*, and the entire abstention doctrine should be practiced when we consider the specific facts of this case. When a Court sits in equity it must apply all relevant canons of substantive equity. Thus, in this case we cannot ignore the theory of estoppel. *See Dobbs, supra* at 41–43. Septum· obtained a promise from the District Attorney that he would forego prosecution until Septum was fully warned of his intent to do so. Essentially, the State was giving up its right to prosecute in State Court to accommodate Septum. The would-be criminal defendant took advantage of the good faith of the District Attorney in order to sue in Federal Court.

The District Court characterized Septum's actions as a waiver of its right to claim there was a justiciable issue. Although this is not quite accurate, I can see that the District Court was trying to achieve the same equities that I adhere to. Septum should be estopped from obtaining an advantage it would not otherwise have had. But for this agreement, Septum would have been involved in a criminal prosecution, brought in good faith, with no hint of the purpose of harassment. *Younger*, specifically holds that neither "the cost, anxiety, and inconvenience" of defending a criminal prosecution, nor the "chilling" of First Amendment rights constitutes the type of irreparable injury necessary to enjoin a state action. 401 U.S. at 46, 50, 91

S.Ct. at 751, 753, 27 L.Ed.2d at 676–77, 679. Moreover, we have every reason to believe this proceeding would have fairly adjudicated Septum's rights. The equities of this case demand that we treat it as if there were a pending prosecution and as if *Younger* and *Samuels* applied to require Federal abstention.