**PENTHOUSE INTERNATIONAL, LTD.,**
**Plaintiff-Appellee,**

v.

**Hinson McAULIFFE, Individually and as Solicitor General for the County of Fulton, State of Georgia, Defendant-Appellant.**

**No. 81-7426.**

United States Court of Appeals,
Eleventh Circuit.

April 11, 1983.

Opinion on Granting of Rehearing En Banc June 30, 1983.

George Weaver, Atlanta, Ga., for defendant-appellant.

Grutman, Schafrann & Miller, Norman Roy Grutman, New York City, Gambrell & Mobley, James L. Paul, Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT and HENDERSON, Circuit Judges, and LYNNE *, District Judge.

TJOFLAT, Circuit Judge:

Penthouse brought this suit to enjoin the Solicitor General of Fulton County, Georgia, Hinson McAuliffe, from prosecuting or threatening to prosecute under the Georgia obscenity statute, Ga.Code § 16–12–80 (1980), any person who exhibited the movie "Caligula," the rights to which Penthouse owns.[1] Penthouse also sought a declaration that "Caligula" is not obscene within the meaning of that obscenity statute as constitutionally applied.[2] After a trial before the district court and an advisory jury, the court declared "Caligula" not obscene under state or federal law. The court denied Penthouse's prayer for a permanent injunction because it assumed that a declaratory judgment would have the same practical effect as an injunction of restraining prosecution or threats thereof. McAuliffe appeals from the district court's entry of declaratory relief in favor of Penthouse.

We affirm the district court's denial of the injunction, although our reasoning differs from that of the district court.[3] We

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Jurisdiction was predicated on 28 U.S.C. § 1343(3) (1976 & Supp. IV 1980), through which 42 U.S.C. § 1983 (1976) is implemented.

2. Penthouse makes no attack on the facial validity of the Georgia obscenity statute. Indeed, such an attack would be frivolous because that statute explicitly incorporates the constitutional standards enunciated in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Ga.Code § 16–12–80 (1980).

3. We recognize that Penthouse never cross-appealed the district court's denial of injunctive relief. Therefore, we discuss such denial at the

risk of pontificating obiter dictum. We believe our discussion is necessary, however, for two reasons. First, our discussion of the district court's grant of declaratory relief would not be complete without a discussion of its denial of injunctive relief. Although the two prayers for relief are separate, they are closely related. A typical complaint, such as the one Penthouse brings, would contain both prayers. Neither should be considered in a vacuum; profitable comparison results from a discussion of both. Second, the district court denied injunctive relief solely because it thought declaratory relief would be sufficient. We now reverse the district court's grant of declaratory relief. Our reasons for agreeing with the district court that it should not have granted injunctive relief are

reverse the district court's grant of Penthouse's prayer for declaratory relief and remand this claim because the court erred in proceeding to a determination of the obscenity vel non of "Caligula."

The essence of Penthouse's complaint is that McAuliffe is infringing on Penthouse's first amendment rights by threatening to prosecute persons involved in the showing of "Caligula."[4] Penthouse alleges that it cannot obtain an exhibitor in Fulton County because of McAuliffe's threats of prosecution.[5] To remedy this infringement, Penthouse seeks two remedies: an injunction against prosecution or threats thereof, and a declaration that "Caligula" is not obscene. Careful analysis reveals that these two remedies are in fact based on separate causes of action.

The focus of Penthouse's suit for an injunction is on McAuliffe's conduct. McAuliffe threatened to enforce a valid criminal statute against behavior that falls within the ambit of the statute, in the sense that a reasonable prosecutor could have believed there was probable cause that those who would be involved in the exhibition of "Caligula" would violate the Georgia obscenity statute as constitutionally applied. Prosecutorial threats in such circumstances give rise to no cause of action for an injunction.[6] To sustain a cause of action for an injunction, Penthouse would have to show some sort of "bad-faith" conduct on McAuliffe's part. We do not mean subjective bad-faith conduct; rather, if Penthouse could show that no probable cause reasonably could have existed to believe that those who would be involved in the exhibition of

---

so different from that of the lower court that we believe we are compelled to state them.

**4.** Penthouse's complaint describes the threats as follows:

*Defendant McAuliffe's Conduct*

16.

Defendant McAuliffe has publicly announced that he considers *Caligula* to be obscene by commencing a lawsuit in United States District Court for the Southern District of New York in the name and style: *Morality In Media, Inc., individually; and Morton A. Hill, S.J., for himself and all others similarly [sic] situated; and Hinson McAuliffe, in his official capacity as Solicitor General of Fulton County, Georgia, himself and all others similarly [sic] situated v. One Motion Picture Film Entitled "Caligula," a res; Edward R. Korman, in his official capacity as United States Attorney for the Eastern District of New York; and Benjamin R. Civiletti, in his official capacity as Attorney General of the United States,* Civil Action No. 80–0640 (hereinafter the "Southern District of New York Lawsuit"). Defendant McAuliffe, allegedly in his capacity as Solicitor General of Fulton County, Georgia, and as part of the Southern District of New York Lawsuit, caused to be issued by the Clerk of said court, a warrant for the seizure of *Caligula.*

17.

In the Southern District of New York Lawsuit initiated by Defendant McAuliffe and others, Defendant McAuliffe alleged under oath that *Caligula* is obscene; and Defendant McAuliffe alleged that if *Caligula* is exhibited in Fulton County, Georgia, Defendant McAuliffe will commit public funds and resources to institute prosecutions under Georgia law.

Record, vol. 1, at 8–9. Penthouse's complaint also alleges that the plaintiffs in the Southern District of New York lawsuit, including McAuliffe, sought to compel the defendants therein to initiate some type of action to prevent the exhibition or distribution of "Caligula" in the United States. *Id.* at 9.

**5.** We have no reason to question the district court's findings that McAuliffe has threatened to prosecute and that Penthouse cannot obtain an exhibitor in Fulton County.

**6.** Indeed, the Supreme Court has, in dicta, addressed a similar, if not identical, situation. *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). After holding an act creating a censorship commission unconstitutional, the Court stated:

[W]e do not mean to suggest that private consultation between law enforcement officers and distributors prior to the institution of a judicial proceeding can never be constitutionally permissible. We do not hold that law enforcement officers must renounce all informal contacts with persons suspected of violating valid laws prohibiting obscenity. Where such consultation is genuinely undertaken with the purpose of aiding the distributor to comply with such laws and avoid prosecution under them, it need not retard the full enjoyment of First Amendment freedoms.

*Id.* at 71–72, 83 S.Ct. at 640. Thus, the Supreme Court has at least intimated that there may be no constitutional problem arising from threats of enforcement of a valid obscenity statute against conduct that falls within the reach of the statute.

"Caligula" would be violating the Georgia obscenity statute as constitutionally applied, because "Caligula" is so clearly not obscene, the requisite objective bad faith would be shown.

■ We base this reasoning on several premises. Our initial and most basic premise is that obscenity is not protected under the first amendment. *See Miller v. California,* 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). Thus, states such as Georgia are free to enact statutes making the exhibition of obscene matter criminal. *See* Ga.Code § 16–12–80 (1980). Our second premise is that states may enforce their valid criminal statutes within constitutional limits. They may also charge certain public officials, such as McAuliffe, with the responsibility of enforcing such laws. Our third premise is that it is fundamental that some innocent persons may be charged with violating criminal statutes, and that absent prosecutorial misconduct, no constitutional claim exists to relieve the burden on those innocent persons of defending valid criminal prosecutions. We believe the validity of these three premises is beyond question. We believe also that these premises lead inescapably to the conclusion that law enforcement officials must be allowed the discretion in good faith to do all that is reasonably necessary to their function of enforcing valid laws, and that the first amendment contemplates no other result.

■ We hold that McAuliffe was well within his discretion in threatening to prosecute persons associated with the showing of "Caligula." Having viewed "Caligula," it is clear to us that a reasonable prosecutor could have believed there was probable cause that those who would be involved in the exhibition of "Caligula" in Fulton County, Georgia, would be violating the Georgia obscenity statute as constitutionally applied. Regardless of the obscenity vel non of the movie, it cannot be contended that the movie is so clearly not obscene that McAuliffe was acting in "bad faith" in threatening to prosecute. Without such a showing, we hold a claim for an injunction

under the first amendment is not stated. Therefore, we affirm the district court's denial of Penthouse's prayer for injunctive relief.

■ Penthouse's second claim seeks a declaratory judgment that "Caligula" is not obscene under the Georgia obscenity statute as constitutionally applied. We hold that Penthouse is entitled to this relief only if it can prove that "Caligula" is not obscene as a matter of federal constitutional law. If factual issues are present, Penthouse's claim must be denied because the claim would be nothing more than a request that a federal court determine whether prospective, possibly illegal conduct is in fact illegal under a valid state criminal statute. To allow such a claim would be to countenance the bypass of the entire state criminal justice system so a federal court could determine the "guilt or innocence," under a valid state criminal statute, of one who proposes to exhibit "Caligula." Notions of comity and federalism preclude us from recognizing such a cause of action, especially in an area in which local community standards are so crucial. *See Miller v. California,* 413 U.S. 15, 30–34, 96 S.Ct. 2607, 2618–20, 37 L.Ed.2d 419 (1973). In contrast, if Penthouse can prove that "Caligula" is not obscene as a matter of federal constitutional law, notions of comity and federalism would not interfere with a federal court's grant of declaratory relief. In granting relief, the federal court would not be invading the province of the state factfinder; rather, it would be determining a question of federal constitutional law as a matter of law.

Furthermore, if Penthouse cannot prove that "Caligula" is not obscene as a matter of law, its claim must fail because it would not prove a present case or controversy. The allegedly protected conduct would be the prospective exhibition of a movie under hypothetical conditions. However, by addressing the claim only as a matter of law, no problem of the requisite case or controversy would exist because the complaint would be that the facts involving the exhibition of the film, *e.g.,* where and when the movie is shown, are irrelevant. The com-

plaint would be that regardless of the factual context in which the movie is shown, the movie is not obscene as a matter of law. Thus, there is nothing to prevent a federal court from recognizing such a cause of action.

We believe the above analysis is consistent with and supported by a case somewhat analagous to this one, *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). In *Steffel* the Supreme Court held that a valid claim for declaratory relief was stated when the complaint alleged threats of prosecution under a facially valid criminal trespass statute against conduct arguably protected under the first amendment. A cognizable claim was stated because a federal court could determine as a matter of law whether such threats violated the plaintiff's constitutional rights. No factual issues needed resolution; a pure question of law was presented. Because such a question was presented, no prohibitive problems of federalism or case or controversy arose.

*Steffel* would have been a much different case had it been disputed whether the plaintiffs would make a "knowing" entry upon the defendant's land within the meaning of the state trespass statute. Problems of federalism and case or controversy would have then arisen. The same problems arose in this case when the district court determined the obscenity vel non of "Caligula." The court had to determine the following hypothetical factual issues under the Georgia obscenity statute: whether the future showing of "Caligula" would predominantly appeal to the prurient interest of the local community; whether the showing would be patently offensive to that community; and whether the showing would have serious literary, artistic, political, or scientific value. See Ga.Code § 16–12–80(b) (1980). Only if these questions can be resolved as a matter of federal constitutional law [7] does this case parallel *Steffel*. If not, the district court must not attempt to resolve these questions because they are more appropriately left to state factfinders and because they involve hypothetical circumstances.[8]

AFFIRMED in part; REVERSED in part and REMANDED.

LYNNE, District Judge, dissenting:

In my opinion the discussion and affirmance of the district court's denial of an injunction are inappropriate. Penthouse did not contest that ruling by a cross-appeal. The superficial parallelism of the remedies of injunctive and declaratory relief would not seem to justify consideration of standards applicable to the former to illuminate the only issue before us, the grant of the latter.

I believe the court's opinion is contrary to the precise holding of *Steffel*:

We therefore hold that, regardless of whether injunctive relief may be appropriate, federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied. 415 U.S. 452, 475, 94 S.Ct. 1299, 1223–24, 39 L.Ed.2d 505 (1973).

---

**7.** Because these questions must be resolved as a matter of law, a jury has no role in these determinations.

**8.** We hold only that the district court cannot decide the question of the obscenity of "Caligula" as a matter of state law. We remand the case for the court to decide the question as a matter of federal constitutional law, just as a federal appellate court would if it was reviewing a state jury determination. *See Jenkins v. Georgia*, 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974) ("We hold that the film could not, as a matter of constitutional law, be found to depict sexual conduct in a patently offensive way, and that it is therefore not outside the protection of the First and Fourteenth Amendments because it is obscene."). Thus, the dissent mischaracterizes our holding as one

of abstention. We are not refusing to intervene to protect federal rights; we are refusing only to decide state law questions. We see no prohibition on deciding whether "Caligula" is protected as a matter of federal constitutional law without deciding any state law questions. The dissent also fails to recognize the separate nature of the state and federal questions. For example, the Georgia obscenity statute must give at least as much protection to "Caligula" as does the first amendment, but the statute may extend greater protection consistent with federal law. Furthermore, state law may vary depending on who applies it, i.e., a federal judge or a state jury. The state should be free to interpret its own law so long as that interpretation is consistent with federal constitutional law.

It is conceded that Penthouse demonstrated a genuine threat of enforcement of the Georgia statute. Clearly there is a dispute as to whether this statute may be applied to "Caligula." McAuliffe believes "Caligula" is obscene; Penthouse does not. Thus there is a case or controversy within the meaning of Article III of the Constitution and the Federal Declaratory Judgment Act, 28 U.S.C. Sec. 2201. *Septum, Inc. v. Keller,* 614 F.2d 456 (5th Cir.1980).

Synthesizing the averments of the complaint, the consolidated pre-trial order, the trial transcript, and the May 15, 1981 order of the court, it is at once apparent that the gravamen of the claim asserted by Penthouse is that "Caligula" is protected by the First Amendment as applied to the States through the Fourteenth Amendment. Concededly obscene material is not protected. *Miller* established a three-prong conterminous test to determine obscenity vel non which Georgia incorporated in its statute.

If "the average person, applying contemporary community standards would [not] find that ["Caligula"], taken as a whole, appeals to the prurient interest," the First Amendment insulates it from the application of the Georgia statute. Appeal to the prurient interest is a question of fact. *Smith v. United States,* 431 U.S. 291, 301, 97 S.Ct. 1756, 1763–64, 52 L.Ed.2d 324 (1977).

It would be anomalous to suggest that it is possible to adjudicate the question of whether material is obscene under the Georgia statute without resolving at the same time whether such material is protected by the First Amendment within the *Miller* definition of obscenity since out of the facts the law arises. Both the advisory jury and the court found as a fact that, applying contemporary community standards, Caligula does not appeal to the prurient interest.

A careful review of the Court's instructions to the jury reveals that its definition of the prurient interest was in accord with the teaching of *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The Court properly charged the jury that the burden of proof with respect to obscenity was proof beyond a reasonable doubt. *McKinney v. Alabama,* 424 U.S. 669, 684, 96 S.Ct. 1189, 1197, 47 L.Ed.2d 387 (1976) (Brennan, J., concurring in the judgment). It is reasonable to assume that the trial judge applied these standards in his own fact findings.

Finally, I cannot agree with the implication of the Court's opinion that the district court was powerless to resolve the question of whether Caligula is obscene under the Georgia statute in order to reach the question as to whether it is protected by the First Amendment; that it is "more appropriately left to state factfinders."

*Septum, Inc.* squarely holds that under the circumstances of this case abstention is inappropriate. Presumably state factfinders would be confined to a criminal proceeding. The fallacy of this approach is demonstrated by the reasoning of *Steffel:*

> [W]hile a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state prosecution is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of foregoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.

415 U.S. at 462, 94 S.Ct. at 1217.

I respectfully dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before GODBOLD, Chief Judge, and RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

BY THE COURT:

A member of this Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the case shall be reheard by this Court en banc *with* oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of en banc briefs.